ANDREW R. HADEN
Acting United States Attorney
Aaron P. Arnzen (Cal Bar No. 218272)
Assistant U.S. Attorney
Federal Office Building
880 Front Street, Room 6293
San Diego, CA 92101-8893
Tel.: (619) 546-8384
Email: aaron.arnzen@usdoj.gov
Attorneys for the United States

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAMES MAHONEY<br><br>Defendant. | Case No. 23CR1118-LL<br><br>UNITED STATES' SENTENCING MEMO |

The UNITED STATES OF AMERICA, by and through its counsel, Andrew R. Haden, Acting United States Attorney, and Aaron P. Arnzen, Assistant U.S. Attorney, hereby files this Sentencing Memorandum regarding Defendant James Mahoney.

## I

## INTRODUCTION

Defendant James Mahoney conspired to repeatedly evade the SEC's registration requirements in order to sell dirty stock to defrauded investors in public companies. For Defendant's participation in this securities fraud scheme, this Court should impose a sentence of 18 months' custody, full restitution to victims, and three years of supervised release.

## II

## STATEMENT OF FACTS

James Mahoney's plea agreement summarizes his involvement in the scheme, the factual basis of which is incorporated by reference herein. In brief, Mahoney conspired

with others to engage in a stock offering scheme, *i.e.*, he schemed to evade the SEC's registation requirements for new stock offerings. In doing so, he and his co-conspirators recieved and sold stock in the public markets that should have been restricted and not available for public sale.

Specifically, Mahoney and CC-1 promoted the stock price of publicly traded companies in exchange for payment in the form of free-trading stock registered on Form S-8 (hereinafter "S-8 shares"). Because the distribution of S-8 shares in exchange for promotional sevices violates the securities laws, Mahoney, CC-1, and CC-2 made the following agreement to conceal the nature of their arrangement:

a. Mahoney and CC-1 would provide stock promotion services to their clients but would not require payment directly from their clients. Rather, Mahoney and CC-1 would direct CC-2 to enter into consulting agreements Mahoney's clients. CC-2 would receive S-8 shares in payment for the purported consulting services.

b. CC-2 would accept the shares and deposit them into his personal brokerage account without disclosing to the brokerage firm his relationship with Defendant and CC-1.

c. CC-2 would sell the shares through the public markets, take his cut, and give Mahoney and CC-1 the remaining sale proceeds.

Defendant and his co-schemers executed on this agremeent at least seven times between 2011 and 2013.

## III

## UNITED STATES' SENTENCING RECOMMENDATION

Based on the facts underlying Defendant's crime, and pursuant to the parties' plea agreement, the United States recommends the following Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures:

| | |
|---|---|
| Base Offense Level [§ 2B1.1(a)] | 6 |
| Gain > $150,000 [§ 2B1.1(b)(1)(F)] | +10 |

|  |  |
|---|---|
| Broker/Dealer [§ 2B1.1(b)(20)(A)] | +4 |
| Acceptance of Responsibility [§ 3E1.1] | -3 |
| <u>Departure/Variance [§ 5K2.0/§ 3553(a)]</u> | <u>-2</u> |
| Adjusted Offense Level | 15 |

Each of these items is discussed below. The United States also agreed to recommend that Defendant be sentenced within the advisory guideline range as calculated by the government.

A.   **GUIDELINE CALCULATION**

  1.   **Base Offense Level and Specific Characteristics**

**Base Offense Level: 6.**  The applicable base offense level for a conspiracy to commit a referenced felony that has a maximum sentence of 20 years is 6.  USSG §§ 2B1.1(a), 2X1.1.

**Gain over $150,000: +10**.  While a fraud defendant's offense level is typically increased based on the amount of "loss" caused by the offense, in certain limited circumstances the Guidelines enhance the sentence based on the defendant's "gain."  <u>See</u> U.S.S.G. § 2B1.1, comment, (n.3(B)) ("The court shall use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined.").  While Defendant's conduct here caused investor losses, the amount of loss properly attributed to him – as being both foreseeable and part of the conspiracy to which he has admitted and been convicted – is difficult to determine in the aggregate under these circumstances.

Mahoney's gain is, on the other hand, more readily determinable based on the funds he obtained from CC-2.  These funds total $155,750.  ECF 4, at p. 4.  Because these funds total more than $150,000 but less than $250,000, a 10-level enhancement is appropriate.

**Acting as a Broker or Dealer: +4.**  When one's criminal conduct involves acting as a securities broker, the Guidelines provide for a 4-level upward adjustment.  <u>See</u> USSG § Broker/Dealer [§ 2B1.1(b)(20)(A)].  Because Mahoney promoted stocks and thereby engaged in the solicitation of investors, which is a traditional hallmark of broker dealer

activity, this adjunct is appropriate. *See* 15 USC § 78c (defining broker as "any person engaged in the business of effecting transactions in securities for the account of others").

**Acceptance of Responsibility: -3.** The United States moves the Court for a downward adjustment for Defendant's acceptance of responsibility pursuant to USSG § 3E1.1. Defendant has acknowledged that he knew the scheme was wrong and "expressed remorse for his actions." ECF 10, at ¶¶ 21-22. He also admitted that he entered into a conspiracy to commit securities fraud, and pled guilty before trial. In addition, the United States agreed to make this motion pursuant to the plea agreement.

2.  **Departure/Variance under USSG § 5K2.0, 18 U.S.C. § 3553(a): -2.** The United States recommends a downward departure and/or variance pursuant to the terms of Defendant's plea agreement. *See* USSG § 5K2.0, 18 U.S.C. § 3553(a). The recommendation specifically takes into account the fact that Defendant has accepted responsibility, waived appeal, and saved resources the Government would have otherwise spent prosecuting the case against him. Given his livelihood in the financial industry, Mahoney also has and will suffer collateral consequences from having a felony conviction. To the extent that these facts and circumstances bear on the appropriate sentence – and the United States believes they do – they should fall under and support this downward adjustment.

* * *

Based on the foregoing, Defendant's adjusted offense level is, by the United States' calculation, equal to 15.

3.  **Criminal History**

The United States is not aware of any scoring convictions. Defendant therefore falls into Criminal History Category I. His Guidelines range is therefore 18 – 24 months.

## IV

## SECTION 3553(a) SENTENCING ANALYSIS

The Sentencing Guidelines are an important factor that must be calculated and considered by the Court in fashioning an appropriate sentence, but they are only one of the

factors set out in 18 U.S.C. §3553(a) that ultimately guide a district court in the exercise of its discretion.  See <u>United States v. Sylvester Norman Knows His Gun, III</u>, 438 F.3d 913, 918 (9th Cir. 2006).  In this case, however, the Sentencing Guidelines provide the correct sentencing range.

**A.     The Need for Sentence to Reflect Seriousness of the Offense**

Engaging in fraudulent securities offerings is a serious offense.  The conspirators here collectively deceived the SEC, brokerage firms, and ultimately investors to create the appearance that their stock could be legally traded in the public markets.  The sentence imposed here should promote respect for the law in general, and for the securities laws and regulations governing capital formation through securities offerings in particular.  Capital formation is absolutely vital to the local and national economies.  But to work well, the system must be based on integrity and the public's trust.  "In looking at the Commission's role in facilitating capital formation for small businesses, it is important to note that the Commission's mission is to do so in a manner consistent with the protection of investors and maintaining the integrity of the capital markets."  See <u>2014 SEC Government-Business Forum on Small Business Capital Formation</u>, *Remarks of Commissioner Luis Gallagher* (available at http://www.sec.gov/info/smallbus/gbfor33.pdf).

Defendant's conduct here did harm to investors, and undermined the integrity of the capital markets.  Defendant's sentence should reflect the seriousness of his crime and the harm he has caused.

**B.     The Kinds of Sentences Available**

**Probation** - If the recommendation of the United States is accepted, Defendant's adjusted offense level of 15 falls within Zone D of the Guidelines Sentencing Table; taking into account his Criminal History Category I, the Guidelines range is 18-24 months.  Given the serious nature of the offense, the Guidelines do not contemplate a probationary sentence.  U.S.S.G. § 5B1.1, comment (n.2).

**Financial Penalty** - The government recommends that the Court refrain from imposing a fine under § 5E1.2(c)(3) so that any proceeds available to Defendant can be used for restitution.

**Restitution** - The government seeks restitution from Defendant, as set forth in the Restitution Addendum to the plea agreement.

### C.  The Need To Avoid Unwarranted Sentence Disparities

A number of penny stock fraud cases have been sentenced in this District in recent years.  Sentences range from probation (multiple) to 46 months (*see United States v. Hackett*, 18CR3071-TWR.  An 18-month sentence is on the lower side in this range.

### V
### CONCLUSION

The Court should sentence Defendant to 18 months' custody, and order him to pay restitution to victims of his crime.  Once he has completed his custodial sentence, Defendant should be placed on a period of supervised release for three years.

DATED: August 29, 2023

Respectfully submitted,

ANDREW R. HADEN
Acting United States Attorney

*/s/Aaron P. Arnzen*
AARON P. ARNZEN
Assistant United States Attorney